**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

UNITED STATES OF AMERICA

v.                                        CRIMINAL ACTION NO.   3:15-00021

JAZZMYN LITZY
          also known as "Zoe"

**MEMORANDUM OPINION AND ORDER**

At sentencing this Court addressed an objection by Defendant, Jazzmyn Litzy ("Ms. Litzy") to the Probation Office's recommendation that this Court apply the career offender enhancement of U.S. Sentencing Guidelines Manual ("U.S.S.G." or the "Guidelines") § 4B1.1 to Ms. Litzy's sentence. The Court was tasked with deciding whether Ms. Litzy's robbery conviction under Ohio law qualified as a "crime of violence" for purposes of the career offender enhancement. As explained below, the Court ruled that a prior robbery conviction under Ohio Revised Code ("O.R.C.") § 2911.02(A)(3) cannot qualify under the U.S. Sentencing Guidelines career offender enhancement as a predicate conviction for a crime of violence. Therefore, the career offender enhancement may not be applied in Ms. Litzy's sentencing.

**I.       Background**

Ms. Litzy stands convicted of possessing with intent to distribute a quantity of heroin in violation of 21 U.S.C. § 841(a)(1). *See Order as to Jazzmyn Litzy* (June 22, 2015), ECF No. 29. The Court accepted her plea on June 22, 2015 and scheduled her sentencing hearing for September 21, 2015. *Id.*

The Probation Office prepared a Presentence Report ("PSR") to assist this Court in sentencing Ms. Litzy. As determined by the PSR, Ms. Litzy's base offense level for possessing

heroin with intent to distribute is 28 under the Guidelines § 2D1.1. Additionally, based on the stipulation of facts, the Probation Office recommended, and the Government supported, increasing Ms. Litzy's offense level by applying enhancements for: possession of a dangerous weapon under § 2D1.1(b)(1), maintaining premises for purpose of manufacturing or distributing a controlled substance under § 2D1.1(b)(12), and career offenders under § 4B1.1(a). The Probation Office also recommended reducing Ms. Litzy's offense level by applying the adjustments for acceptance of responsibility under § 3E1.1(a) and (b).

Prior to sentencing, Ms. Litzy objected to several parts of the PSR, including applying the career offender enhancement to her sentence. Ms. Litzy's objections were dealt with before and during the sentencing hearing on September 21, 2015. After concluding the career offender enhancement does not apply in Ms. Litzy's case, this Court sentenced Ms. Litzy to 108 months' imprisonment and three years of supervised release. The Court issues this written order to explain why it did not apply the career offender enhancement in Ms. Litzy's case. Some background on Ms. Litzy's criminal history is now in order.

Ms. Litzy's criminal record is blemished by two prior felony convictions relevant to her present sentencing. *See Plea Agreement,* Exhibit A at 2 (June 22, 2015), ECF No. 32; *Presentence Report* 15–16 (Sept. 24, 2015), ECF No. 37 (prepared on Sept. 8, 2015). Her first conviction is a 2001 Ohio robbery offense. Specifically, she was convicted of third degree felony robbery under Ohio Revised Code § 2911.02(A)(3). Twenty-one years old at the time, she was sentenced to one year in prison but was granted parole after six months of incarceration. In 2005, she successfully completed her term of parole without incident.

Ms. Litzy's second relevant conviction is a 2006 drug trafficking offense. For this and a tampering with evidence offense, she served a five year prison term beginning in 2007 and lasting

until 2012. Following completion of her 2007 sentence, Ms. Litzy received no form of supervised release, no required stay in a halfway house, parole, or any form of supervision designed to ease her back into society. Not long after she was released from prison in 2007, Ms. Litzy returned to a lifestyle of illicit behavior—including the drug possession for which she now is convicted by this Court.

## II.     Discussion

Under the Sentencing Guidelines, a convicted defendant will receive an enhanced sentence if the defendant is a "career offender." U.S. SENTENCING GUIDELINES MANUAL § 4B1.1 (U.S. SENTENCING COMM'N 2004). A career offender is a defendant: (1) who is "at least eighteen years old at the time the defendant committed the instant offense of conviction"; (2) whose instant offense is "a felony that is either a crime of violence or a controlled substance offense"; and (3) who "has at least two prior felony convictions of either a *crime of violence* or a controlled substance offense." U.S.S.G. § 4B1.1(a) (emphasis supplied). The Guidelines, in § 4B1.2(a), define "crime of violence" as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). Often, § 4B1.2(a)(1) is referred to as the "force clause," while § 4B1.2(a)(2) contains what is known as the "residual clause."[1] *See e.g.*, *United States v. Shell*, 789 F.3d 335, 341 (4th Cir. 2015).

---

[1] The residual clause states that it applies to offenses that "otherwise involve[] conduct that presents a serious risk of physical injury." U.S.S.G. § 4B1.2(a)(2).

Additionally, Application Note 1 to § 4B1.2(a) enumerates robbery among several offenses that are considered crimes of violence. U.S.S.G. § 4B1.2(a) cmt. n.1. The commentary to the Guidelines is authoritative and binding, "unless it violates the Constitution or a federal statute, or is inconsistent with, or plainly erroneous reading of," the Guideline itself. *Stinson v. United States*, 508 U.S. 36, 38 (1993). But the text of the Guidelines takes precedence over the commentary, *Shell*, 789 F.3d at 340, and so courts should begin by applying the textual definition for crime of violence and then look to the commentary, which serves only to amplify the textual definition. *See id.* at 345 (ruling that § 4B1.2(a) provides a two-part definition of crime of violence in its text, and any inconsistency between the two is resolved in favor of the text).

When a defendant has a conviction under state law that is labeled identically to a commentary enumerated offense, the state conviction must come within the Guidelines' meaning of that enumerated offense before the state conviction can qualify as a "crime of violence." *See United States v. Peterson*, 629 F.3d 432 (4th Cir. 2011) (holding North Carolina conviction for manslaughter does not constitute "manslaughter" as enumerated in commentary to § 4B1.2). In short, offenses in the commentary do not have "free-standing definitional power" and must be either linked to a prong of § 4B1.2(a)'s textual definition for crime of violence or the commentary's generic definition of the enumerated offense. *See Shell*, 789 F.3d at 345 (ruling that § 4B1.2, unlike §2L1.2, cannot be applied to offenses committed without "violent" force); *Peterson*, 629 F.3d at 435–37 (discussing two-step approach for whether North Carolina conviction for manslaughter constitutes manslaughter within the meaning of the commentary).

Courts employ a "categorical approach" in determining whether a prior conviction constitutes a crime of violence under the Guidelines. *Taylor v. United States*, 495 U.S. 575, 588, (1990) ("[T]he enhancement provision always has embodied a categorical approach to the

designation of predicate offenses"); *Peterson*, 629 F.3d at 435 (citations omitted). The categorical approach focuses on the elements, rather than the facts, of the prior offense, *Shell*, 789 F.3d at 338 (citations omitted), and sentencing courts applying the categorical approach must look at how the law underlying the conviction defines the offense, not how the defendant's particular conduct constituted an offense on a particular occasion. *Id.* The question becomes whether the full range of conduct covered by the statutory definition of the state crime, including the most innocent conduct, would qualify as a crime of violence for purposes of § 4B1.2(a). *Id.* at 339 (citation and quotations omitted). If it is evident, after comparing the state statute and § 4B1.2(a), that some violations of the statute are "crimes of violence" and some violations are not, then the state offense is deemed "categorically overbroad" and § 4B1.2 does not apply. *Id.* (citation and quotations omitted). Where the prior state conviction is categorically overbroad, it cannot constitute a predicate crime of violence for purposes of § 4B1.1's career offender enhancement, and the enhancement cannot be applied.

The issue before this Court is whether Ms. Litzy's 2001 Ohio robbery conviction is a "crime of violence" for purposes of the career offender enhancement. Ms. Litzy's Ohio robbery conviction is one of two predicate offenses relied upon by the Probation Office in recommending Ms. Litzy's career offender designation. If the Ohio robbery conviction qualifies as a crime of violence under § 4B1.2(a), then it constitutes one of two predicate offenses required to apply the career offender enhancement in Ms. Litzy's case. If the Ohio robbery conviction does not qualify, then Ms. Litzy has only one predicate offense and the career offender enhancement cannot be applied.

Ms. Litzy argues that her Ohio robbery conviction cannot constitute a crime of violence under either the force clause or the residual clause of the enhancement, and her conviction is not

considered a crime of violence even though robbery is enumerated in the commentary. *Defendant's Sentencing Memorandum* 5 (Sept 14, 2015), ECF No. 33. At first blush it may appear obvious that robbery is a crime of violence, but further inquiry using the categorical approach is required.[2] This inquiry reveals that a robbery conviction under O.R.C. § 2911.02(A)(3) does not meet the definition of a "crime of violence," as the Sentencing Guidelines career offender enhancement uses that term. Next, the Court will discuss each of Ms. Litzy's contentions.

### A.  The Force Clause

First, Ms. Litzy argues that her robbery conviction under Ohio law does not constitute a crime of violence under § 4B1.2(a)'s force clause. This Court agrees.

### 1.  Physical force under § 4B1.2(a)(1) means violent force capable of causing physical injury to a person

The career offender enhancement's force clause defines crime of violence as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year that has as an element the use, attempted use, or threatened use of *physical force* against the person of another." U.S.S.G. § 4B1.2(a)(1) (emphasis supplied). The Guideline text does not define the term "physical force." The Supreme Court, however, has interpreted the term physical force as it is used in the violent felony definition under the Armed Career Criminal Act ("ACCA"), which the Fourth Circuit looks to for guidance when interpreting the Guidelines career offender enhancement, *see*

---

[2] The Court's analysis and decision that robbery under Ohio law requires a closer inquiry is supported by an illustration from *Johnson v. United States*, 135 S.Ct. 2551 (2015). The *Johnson* Court—in the context of discussing the ACCA's residual clause—used a state law against prison rioting as an example of how the law's broad definition of an offense allowed it to apply to non-violent conduct. *Id.* at 1260. The Court noted that prison rioting "certainly sounds like a violent felony—until one realizes that Connecticut defines this offense to include taking part in 'any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations' of the prison." *Id.* The Court went on to rhetorically ask, "Who is to say which the ordinary 'disorder' most closely resembles—a full-fledged prison riot, a food-fight in the prison cafeteria, or a 'passive and nonviolent [act] such as disregarding an order to move[.]'" *Id.* (citation omitted).

*United States v. Montes-Flores*, 736 F.3d 357, 363 (4th Cir. 2013); *United States v. Clay*, 627 F.3d 959, 965 (4th Cir. 2010).

In *Johnson v. United States*, 559 U.S. 133 (2010) the Supreme Court concluded that "physical force" under the ACCA means "*violent* force . . . capable of causing physical harm to a person." *Johnson*, 559 U.S. at 140 [hereinafter *Johnson* (2010)]. The adjective "violent," the Court noted, connotes a strong physical force is required to meet the definition of violent felony under the ACCA. *Id.* The Court distinguished this statutory requisite physical force from the common law's usage of the term, noting the ACCA definition of physical force requires more than the common law definition of force. *Id.* at 139–40. Specifically, at common law the force element of a crime could be satisfied by even the slightest offensive touching. *Id.* at 139. The Court made clear that the common law standard for force—a slight offensive touching—is not sufficient to constitute physical force under the ACCA. *Id.*

The Seventh Circuit's decision in *United States v. Evans* illustrates how a seemingly violent crime may not qualify as such for purposes of Guidelines § 4B1.2(a)'s force. In *Evans*, the Seventh Circuit ruled that a conviction for aggravated battery under Illinois law could not constitute a crime of violence under the force clause. *United States v. Evans*, 576 F.3d 766, 767 (7th Cir. 2009). The court reasoned "physical force" was not an element of aggravated battery under Illinois law because all the statute required was "proof of making an 'insulting or provoking' physical contact with a woman known to be pregnant." *Id.* "Insulting" and "provoking," the court noted, were taken from the common law tort of battery, which under Illinois law required only an offensive contact, spitting on another being the typical example of such. *Id.* at 768. Spitting on another does not involve "'physical force' or inflict bodily harm," and so aggravated battery in

Illinois does not qualify as a crime of violence under the enhancement's force clause. *Id.* (citation omitted).

Therefore, if a state statute's force element is satisfied by a mere uninvited touch, a conviction under that state law cannot constitute a crime of violence under the force clause. *Id.* at 140. To constitute a crime of violence under the force clause, the conviction must fall under the portion of a state law that punishes only "*violent* force . . . capable of causing physical harm to a person." *See Johnson*, 559 U.S. at 139; *Shell*, 789 F.3d at 338 (explaining categorical approach). If the state law punishes more conduct than violent force capable of causing physical harm to a person, a conviction under that state law cannot constitute a crime of violence under the career offender enhancement's force clause. *Shell*, 789 F.3d at 338.

### 2.   The force element of Ohio's robbery statute is satisfied by non-violent force

Applying the meaning of physical force from *Johnson* (2010), a conviction under O.R.C. § 2911.02(A)(3), as interpreted by Ohio courts, does not meet the definition of crime of violence under Guidelines § 4B1.2(a)'s force clause. In order to determine what force is sufficient to sustain a robbery conviction under O.R.C. § 2911.02(A)(3), this Court looks to the portion of the Ohio robbery statute at issue and interpretations of that statute by Ohio courts. *See Johnson*, 559 U.S. at 138 (looking to Florida Supreme Court's interpretation of phrase "actually and intentionally touching" under Florida battery statute).

The Ohio robbery statute punishes any person who, during or after committing theft, uses or threatens the immediate use of force against another. O.R.C. § 2911.02(A)(3). "Force," O.R.C. 2901.01(A)(1) defines as, "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." An Ohio court of appeals once concluded "[t]he type of force envisioned by the legislature in enacting [O.R.C. §] 2911.02 is that which poses actual or

potential harm to a person." *State v. Carter*, 504 N.E.2d 469, 470 (Ohio Ct. App. 1985) (citing O.R.C. § 2911.02; *State v. Ballard*, 469 N.E.2d 1334 (Ohio Ct. App. 1984)). However, the Ohio Supreme Court has found the force element satisfied "if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the influence of the terror impressed." Syl. pt. 1, *State v. Davis*, 451 N.E.2d 772 (Ohio 1983). Furthermore, an Ohio court of appeals has held the threat of violence, compulsion, or constraint need not be direct and explicit; rather, it can be implied from the perpetrator's demeanor and tone of voice. *State v. Bush*, 694 N.E.2d 984, 986 (Ohio Ct. App. 1997) (citing *State v. Davis*, 451 N.E.2d 772 (Ohio 1983)). The Ohio courts' expansive interpretation of force is best illustrated in *Carter*, 504 N.E.2d at 470, where an Ohio court of appeals held a defendant's ripping a purse from the victim's shoulder and hands constituted force sufficient to violate Ohio's robbery statute.[3]

The force element of Ohio's robbery statute encompasses some conduct that does not meet *Johnson* (2010)'s definition of physical force. Based on text alone, the definition of force in O.R.C. § 2901.01(A)(1) includes "compulsion" and "constraint" exerted against a "thing."

Ohio's statutory force definition is problematic in two ways. First, Ohio's force definition lists compulsion and constraint in addition to violence, meaning that compulsion or constraint exerted without violence is enough to constitute force under Ohio's statute. *Johnson* (2010) makes clear that non-violent "constraint" and "compulsion"—both constituting force under Ohio law— are not sufficient to constitute "physical force." *See United States v. Castro-Vazquez*, No. 13-1508,

---

[3] Additionally, in *State v. Pace*, No. 80AP-200, 1980 WL 353698 (Ohio Ct. App. Sept. 16, 1980) (unpublished), the Ohio court of appeals went further and held the mere act of snatching a billfold from another's hand—without grabbing the victim, striking, or saying anything to the victim—constitutes use of force within the contemplation of O.R.C. § 2901.01(A).

2015 WL 5172839, at *8 (1st Cir. Sept. 4, 2015) (remanding on issue of robbery as predicate crime of violence when Puerto Rico law defined "violence" to include the slightest use of force). Second, Ohio's force definition, by its text, applies in some instances of force exerted against a *thing* and not a person. Violence against a *thing*, as opposed to violence against a *person*, is not sufficient to constitute "physical force," as that term is used in § 4B1.2(a)(1). *See Johnson*, 559 U.S. at 140.

These two textual features of Ohio's "force" definition make Ohio's force term broader than the physical force definition under *Johnson* (2010), which requires force capable of causing physical *injury* to a *person*. The Ohio courts' interpretation of the force term could save the statute's applicability to § 4B1.2(a)(1), *see id.* at 138, but it does not.

Ohio's courts have interpreted the force element of the Ohio robbery statute in a manner that does not meet *Johnson* (2010)'s standard for physical force. Merely snatching a billfold from a victim, without any actual or threatened contact with the victim, *see Carter*, 504 N.E.2d at 470, is not violent force capable of causing physical injury. The Ohio Supreme Court's rule from *State v. Davis*—that sufficient force occurs when the defendant impresses on the victim fear likely to induce a person to part with property—is so broad it could be used to convict for any sort of threat, not just violent threats. Moreover, the threat sufficient to constitute force under Ohio law need not be violent or direct, it could be a threat of compulsion or constraint, and it could be made indirectly, such as a threat implied from demeanor or tone of voice. *See Bush*, 694 N.E.2d at 986. Therefore, the force element of Ohio's robbery statute, O.R.C. § 2911.02(A)(3), as further defined in statute at O.R.C. § 2901.01(A)(1) and interpreted by Ohio courts, encompasses more conduct than the violent physical force required under *Johnson* (2010).

Following the categorical approach, a conviction under O.R.C. § 2911.02(A)(3) cannot constitute a predicate crime of violence under § 4B1.2(a)'s force clause because offenses under

-10-

O.R.C. § 2911.02(A)(3) may be committed without "physical force," as that term is defined in *Johnson* (2010). *See Shell*, 789 F.3d at 340–41 (holding offenses that may be committed without physical force are not categorically crimes of violence). "If it is evident from the statutory definition of the state crime that some violations of the statute are crimes of violence and others are not, then the state offense is deemed categorically overbroad and § 4B1.2 does not apply." *Id.* at 339 (citations and quotations omitted). As discussed above, Ohio's robbery law at issue here punishes non-violent constraint and compulsion exerted against a thing, while the term physical force, as interpreted by the Supreme Court in *Johnson* (2010) and used in the Gudielines, only encompasses violent force capable of harming a person. Thus, O.R.C. § 2911.02(A)(3) falls short of § 4B1.2(a)(1)'s physical force requirement, and as a result, § 4B1.2(a)(1) will not serve as a basis for finding Ms. Litzy's robbery conviction a crime of violence.

## B.  The Residual Clause

Second, Ms. Litzy contends her Ohio robbery conviction cannot constitute a crime of violence under § 4B1.2(a)(2)'s residual clause because that clause is unconstitutionally vague in light of the Supreme Court's decision in *Johnson v. United States*, 135 S.Ct. 2551 (2015). Her argument goes as follows: *Johnson* ruled unconstitutionally vague the residual clause in the "violent felony" definition under the Armed Career Criminal Act (ACCA); the Guideline residual clause at § 4B1.2(a)(2) is identical to the one held unconstitutional in *Johnson*; therefore, the residual clause at § 4B1.2(a)(2) is also unconstitutionally vague. *Defendant's Sentencing Memorandum* at 5. The Fourth Circuit has yet to decide whether *Johnson's* holding applies to the residual clause of § 4B1.2(a)(2). *See United States v. Frazier*, No. 15-4047, 2015 WL 5062273, at *2 (4th Cir. Aug. 28, 2015) (assuming without deciding that after *Johnson* it was error to apply residual clause of § 4B1.2(a)(2) in order to find conviction was crime of violence). After careful

-11-

analysis, this Court rules that *Johnson's* holding applies to the Guidelines career offender enhancement, and therefore, the residual clause of § 4B1.2(a)(2) is unconstitutionally vague.

In *Johnson*, the Supreme Court held that the residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), is so shapeless and vague that an increased sentence under the clause violates the convicted individual's right to due process. *Johnson*, 135 S.Ct. at 2563. The Court reasoned that two features of the ACCA residual clause made it unconstitutionally vague. *Id.* at 2557. First, it left "grave uncertainty about how to estimate the risk posed by a crime." *Id.* Second, it left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558.

The residual clause in the career offender enhancement is identical to the residual clause in the ACCA.[4] In fact, The Sentencing Commission adopted verbatim the residual clause of the ACCA. *United States v. Fuertes*, No. 13-4755, 2015 WL 4910113, at *n.7 (4th Cir. Aug. 18, 2015) (declining to rule on constitutionality of residual clause in 18 U.S.C. § 924(c)(3)(B) because it was not identical to residual clause in *Johnson*). Therefore, the same vagueness concerns addressed by the *Johnson* Court persist with the residual clause of the career offender enhancement.[5]

Furthermore, the Fourth Circuit has interpreted the residual clause of §4B1.2(a)(2) interchangeably with its interpretation of the ACCA residual clause because the two are "substantively identical." *See Montes-Flores*, 736 F.3d at 363; *Clay*, 627 F.3d at 965. Hence, it is appropriate for this Court to hold the career offender enhancement's residual clause is

---

[4] Guidelines § 4B1.2(a)(2)'s residual clause defines "crime of violence" as: "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . *involves conduct that presents a serious potential risk of physical injury to another*." U.S.S.G. § 4B1.2(a)(2) (emphasis supplied).

ACCA, 18 U.S.C. § 924(e)(2)'s residual clause defines "violent felony" as: "any crime punishable by imprisonment for a term exceeding one year . . . that . . . *involves conduct that presents a serious potential risk of physical injury to another*." § 924(e)(2)(B) (emphasis supplied).

[5] The vagueness problems inherent in the residual clause of the career offender enhancement are discussed at length later in this section.

-12-

unconstitutionally vague by applying Supreme Court precedent holding vague the ACCA residual clause. *See Jackson v. O'Brien*, No. 13-256, 2015 WL 4389561, at n.7 (N.D.W. Va. July 17, 2015) (noting that if *Johnson* is made retroactive, *Johnson* may be successfully applied to habeas claims challenging enhancements under § 4B1.2(a)(2)); *see also United States v. Darden*, 605 F. App'x 545, 546 (6th Cir. 2015) (holding defendant could not receive enhanced sentence under residual clause of §4B1.2(a)(2) because of *Johnson* and circuit precedent interpreting both residual clauses identically).

This Court holds that enhancing a convicted individual's sentence under the residual clause of the career offender enhancement, § 4B1.2(a)(2), denies due process of law because the residual clause is unconstitutionally vague. *See Johnson*, 135 S.Ct. at 2563. Therefore, the Court will not look to that clause when deciding whether Ms. Litzy's Ohio robbery conviction is a crime of violence for purposes of the career offender enhancement.

Support for this Court's ruling on the residual clause is found in similar conclusions of other courts, the Supreme Court's vacating—after deciding *Johnson*—sentences enhanced under the career offender residual clause, and the Sentencing commission's decision to amend the residual clause.

Several courts have already considered whether the Supreme Court's decision in *Johnson* abrogates the residual clause of § 4B1.2(a)(2). Some have held that *Johnson* does not abrogate the residual clause of § 4B1.2(a)(2). *See United States v. Rollins*, No. 13-1731, 2015 WL 5117087, at *1 (7th Cir. Sept. 1, 2015) (ruling *Johnson* had no effect on career offender enhancement's residual clause because under Seventh Circuit precedent the Sentencing Guidelines cannot be challenged as unconstitutionally vague); *United States v. Kosmes*, 792 F.3d 973, n.4 (8th Cir. 2015) (ruling that case involving enumerated offense precluded review of residual clause); *United States v.*

*Cotton*, No. 15-21-FL, 2015 WL 4757560, at *4 (E.D.N.C. Aug. 12, 2015); *McRae v. United States*, No.13-3331, 2015 WL 4641167, at *4 n.1 (D. Md. Aug. 3, 2015) (noting *Johnson* does not affect sentences enhanced under the Guidelines because they "require a different analysis being merely advisory"). Other courts have ruled that *Johnson* does preclude enhancing sentences pursuant to § 4B1.2's residual clause. *See United States v. Goodwin*, No. 13-1466, 2015 WL 5167789, at *3 (10th Cir. Sept. 4, 2015) (holding district court erred by using § 4B1.2(a)(2)'s residual clause to enhance sentence because it is "essentially identical" to the ACCA's unconstitutionally vague residual clause). *Darden*, 605 F. App'x at 546 (sixth circuit holding defendant could not receive enhanced sentence under residual clause of §4B1.2(a)(2) because of *Johnson*); *United States v. Smith*, No. 14-0501, 2015 WL 5136871, at *2 (D. Md. Aug. 31, 2015) (ruling without discussion that due to *Johnson* Government could not rely on residual clause of § 4B1.2(a)(2) in proving assault with deadly weapon constituted crime of violence). Still others have noted the question but avoided it entirely. *See e.g.*, *Castro-Vazquez*, No. 13-1508, 2015 WL 5172839, at *9 (First Circuit remanding without deciding *Johnson* issue); *United States v. Lux*, 611 F. App'x 464, 465 (9th Cir. 2015) (declining to decide *Johnson* issue because of mootness).

The Eleventh Circuit has concluded, along with other courts, that *Johnson* does not apply to the residual clause of § 4B1.2(a)(2). Rather than apply *Johnson* to hold the residual clause of § 4B1.2(a)(2) is unconstitutionally vague, the Eleventh Circuit—following the lead of the Seventh Circuit—has concluded the Vagueness Doctrine does not apply to the Sentencing Guidelines because of the Guidelines' advisory nature. *United States v. Matchett*, No. 14-10396, 2015 WL 5515439, at *7 (11th Cir. Sept. 21, 2015) (relying on reasoning from *United States v. Tichenor*, 683 F.3d 358, 364 (7th Cir. 2012)).

-14-

Currently, there is a split among the circuits on whether the Guidelines may be challenged on vagueness grounds, and the Fourth Circuit has not clearly answered this question. Most important for this case, the Fourth Circuit—in which this Court sits—has not held the Sentencing Guidelines are immune from a vagueness challenge. *See Matchett*, 2015 WL 5515439, at *8 (collecting circuit decisions holding Guidelines cannot be challenged for vagueness and listing no Fourth Circuit case). In past unpublished decisions, the Fourth Circuit has considered the merits of several vagueness challenges to the Guidelines,[6] but at best, this indicates the Fourth Circuit has assumed without deciding the Guidelines are subject to challenge on vagueness grounds. The Fourth Circuit has not, however, directly held the Guidelines may be unconstitutionally vague. And so, this Court will explain why it finds the Guidelines are subject to a vagueness challenge, despite authority from other circuits to the contrary.

This Court finds unpersuasive the notion that the Vagueness Doctrine does not apply to the Guidelines. The conclusion that due process is not implicated when defendants are sentenced using the Guidelines is steeped in a myth about how the Guidelines operate. Although the Guidelines are "advisory" in nature, they are the "starting point" and "benchmark" for sentencing judges, *Gall v. United States*, 552 U.S. 38, 49 (2007), and in order to vary from a Guidelines sentence, the sentencing judge must offer a legally sufficient reason that will withstand review for

---

[6] *See United States v. Moore*, 107 F.3d 868 (4th Cir. 1997) (unpublished) (rejecting defendant's argument that Guidelines' definition of cocaine base is unconstitutionally vague because that term is not "facially ambiguous"); *United States v. Nolton*, 125 F.3d 850 (4th Cir. 1997) (unpublished) (rejecting defendant's argument about vagueness of Guidelines cocaine base term because court had previously considered and rejected this argument); *United States v. Pendergrass*, 47 F.3d 1166 (4th Cir. 1995) (unpublished) (rejecting defendant's argument about vagueness of Guidelines cocaine base and bolstering conclusion by noting commentary mentions cocaine base is synonymous with crack); *United States v. Padgett*, 981 F.2d 1252 (4th Cir. 1992) (unpublished) (rejecting as without merit defendant's argument that Guideline term cocaine base is unconstitutionally vague).

reasonableness. *See United States v. Booker*, 543 U.S. 220, 261 (2005). As a starting point, the Guidelines limit a sentencing Judge's discretion because the Sentencing statute requires the Judge to calculate and consider the Guidelines sentencing range before imposing a sentence. *See Booker*, 543 U.S. at 245; *id.* at 159. Hence, although judges may decide to sentence not within the Guidelines, judges *must* consult the Guidelines and they stray from Guideline sentences at their own peril, making the Guidelines quasi-advisory in effect and bringing them closer to a statute which fixes sentences, *see Johnson*, 135 S.Ct. at 2557 (statute fixing sentences subject to vagueness challenge), than a sort of suggested option. In effect, the Sentencing Guidelines do not just *guide* or *assist* judges on how to sentence as much as they *direct* judges to sentences deemed appropriate by policy-makers in certain types of cases.

The same vagueness problems plaguing the ACCA residual clause persist when applying the career offender enhancement's residual clause. More specifically, the career offender enhancement's residual clause leaves the same "grave uncertainty about how," a sentencing judge should, "estimate the risk posed by a crime." *See Johnson*, 135 S.Ct. at 2557. And the "uncertainty about how much risk it takes for a crime to qualify as a violent felony," *id.* at 2558, is no more certain under the residual clause of the career offender enhancement than it was under the ACCA's residual clause. Thus, as a practical matter, the "standardless sweep" of the language in the ACCA's residual clause is no less problematic for sentencing judges applying the identically worded residual clause of the career offender enhancement. And so, the latter invites the same "arbitrary enforcement" in applying the career offender enhancement that the former invited in applying the armed career offender statute. *See id.* at 2556. Making a distinction between the two identically worded residual clauses is bowing to form over substance. In the end, a convicted individual whose sentence is lengthened under the career offender enhancement's residual clause

goes to prison for a much longer period of time because of a sentencing judge's arbitrary application of a standardless rule.

At least one circuit that previously held the Vagueness Doctrine inapplicable to the Guidelines has nonetheless cited *Johnson* and vacated sentences enhanced under the residual clause of the career offender enhancement. *Compare United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996) ("[T]he Sentencing Guidelines are not subject to a vagueness challenge."), *with Darden*, 605 F. App'x at 546 (holding defendant could not receive enhanced sentence under residual clause of §4B1.2(a)(2) because of *Johnson*), *and United States v. Collins*, No. 12-6263, 2015 WL 4997453, at *32 (6th Cir. Aug. 24, 2015) (applying *Johnson* and reciting § 4B1.2(a)(2) without residual clause).

Moreover, after *Johnson*, the Supreme Court itself vacated sentences enhanced solely under the Guidelines, rather than deny *certiorari* or dismiss the appeal. *See e.g.*, *United States v. Maldonado*, 581 F. App'x 19, 22–23 (2nd Cir. 2014), *vacated*, 135 S.Ct. 2929 (2015); *Beckles v. United States*, 579 F. App'x. 833, 833–34 (11th Cir. 2014), *vacated*, 135 S.Ct. 2928 (2015).

Lastly, the U.S. Sentencing Commission has proposed deleting the residual clause of § 4B1.2(a)(2) in order to make the Guidelines consistent with *Johnson*. News Release, U.S. Sentencing Comm'n, *U.S. Sentencing Commission Seeks Comment on Revisions to Definition of Crime of Violence* 1 (Aug. 7, 2015).

Hence, this Court declines to follow the Eleventh Circuit's position on vagueness challenges to the Guidelines. This Court rules that *Johnson's* holding applies to the Guidelines career offender enhancement. *See Goodwin*, No. 13-1466, 2015 WL 5167789, at *n.3 (declining to rule on whether Vagueness Doctrine applies to Guidelines, but assuming it does and applying *Johnson*'s holding to § 4B1.2(a)'s residual clause). Enhancing a convicted individual's sentence

-17-

under the residual clause of the career offender enhancement § 4B1.2(a)(2) denies due process of law because the residual clause is unconstitutionally vague. *See Johnson*, 135 S.Ct. at 2563. Because the residual clause is unconstitutionally vague, the Court will not look to that clause when deciding whether Ms. Litzy's Ohio robbery conviction is a crime of violence for purposes of the career offender enhancement.

### C.  Robbery Enumerated in the Commentary

The commentary's enumeration of robbery as a crime of violence is Ms. Litzy's final hurdle in escaping the career offender enhancement.[7]  As explained below, the Court rules that Ms. Litzy's conviction for robbery under Ohio law, specifically O.R.C. 2911.02(A)(3), does not constitute robbery for purposes of the commentary to U.S.S.G. § 4B1.2(a).

Although a particular offense is enumerated in the career offender enhancement commentary, a court cannot apply the enhancement simply because the defendant is convicted of violating a state law labeled identically to an enumerated offense. *See United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991); *see also United States v. McAllister*, 927 F.2d 136, 139 (3d Cir. 1991) (if a state defined robbery to include an offense greatly divergent from the common law definition of robbery, more analysis may be required). Where a particular criminal statute defines "robbery" idiosyncratically, perhaps dispensing with an element that made it a crime of actual or

---

[7] As an initial matter, the robbery offense enumerated in the commentary, if it is meant merely to elucidate the residual clause, is also invalidated by *Johnson*. Ms. Litzy claims the Sentencing Commission indicated its purpose behind enumerating offenses in the commentary was to flesh-out the residual clause under 18 U.S.C. § 924(e). *See* U.S.S.G. Appendix C, amendment 268 (eff. Nov.1, 1989) & amendment 461 (eff. Nov.1, 1992). However, the Court, after reviewing relevant sections of Appendix C, is unable to find that the offenses are enumerated in the commentary solely for the purpose of interpreting the residual clause. Therefore, the Court will assume without deciding that the commentary's enumerated offense of Robbery is still operative after *Johnson*, *see e.g.*, *United States v. Kosmes*, 792 F.3d 973, 976 (8th Cir. 2015), perhaps for purposes of clarifying the intended reach of § 4B1.2(a)'s force clause.

threatened force against the person, the commentary will not provide a means of applying the enhancement. *Jones*, 932 F.2d at 625.

In short, where, as here, the Guidelines enumerate an offense as a crime of violence, a court must determine whether the state statute defining the crime meets a generic definition envisioned by the drafters of the Guidelines or whether the state statute defines the crime idiosyncratically. Under this analysis, a court disregards the label placed on the state crime; it selects an appropriate source for a generic definition of the crime, and asks whether the conduct required for conviction under the state's statute, is "a natural equivalent to the [generic] offense [] envisioned by the Guidelines' drafters." *United States v. Lockley*, 632 F.3d 1238, 1242 (11th Cir. 2011); *see Taylor*, 495 U.S. at 602.

Thus, applying the categorical approach to offenses enumerated in the commentary involves two steps. *Peterson*, 629 F.3d at 436 (citing *Taylor*, 495 U.S. at 598). First, a court must distill a "generic" definition of the predicate offense based on how the offense is defined by a majority of the States, learned treatises, and the Model Penal Code ("MPC"). *Id.* (citation omitted). Second, after finding the generic form of the predicate offense, a court must determine whether the defendant's prior conviction constituted a conviction of the generic offense. *Id.*

The second step requires comparing the elements of the crime of conviction with the generic offense; courts are not to compare the defendant's prior conduct with the generic offense. *Id.* If the state statute follows the generic definition with only minor variations, or is narrower than the generic definition, the state conviction can serve as a predicate offense for the career offender enhancement. *Taylor*, 495 U.S. at 599. If, however, the state's definition is broader than the generic definition, the state conviction cannot, under the categorical approach, serve as a predicate conviction for the enhancement. *Id.* at 599–602.

-19-

As explained below, in the instant case the Court rules that the Ohio robbery statute is broader than the generic form of robbery used in the Guidelines commentary. As a result, the Court will not apply the robbery offense enumerated in the commentary to find Ms. Litzy's 2001 Ohio robbery conviction is a predicate crime of violence under the career offender enhancement.

Under *Taylor*, the Court must determine whether an Ohio conviction for robbery is "robbery" for purposes of the Sentencing guidelines commentary, and so the Court must ask: (1) what constitutes "robbery," as the term is used in the Sentencing Guidelines commentary, and (2) does the Ohio conviction for robbery qualify as "robbery" under the Sentencing Guidelines commentary. *Peterson*, 629 F.3d at 435.

First, the MPC's definition of robbery is likely the generic definition the Guidelines drafters intended to apply for purposes of § 4B1.2(a) cmt. n.1. The conduct that constitutes "robbery" varies greatly from state to state; this is illustrated in the above discussion of Ohio's unique definition of force under Ohio's robbery law. Therefore, this Court concludes that, as the Supreme Court did in *Taylor* and the Fourth Circuit did in *Peterson*, the MPC provides the best generic, contemporary definition of the enumerated offense, and that the drafters of the Guidelines commentary likely intended to use the MPC's definition of the robbery offense. *Peterson*, 629 F.3d at 436. According to the MPC, robbery occurs when a person, in the course of committing a theft: "(a) inflicts serious bodily injury upon another; (b) threatens another with or purposely puts him in fear of immediate serious bodily injury; or (c) commits or threatens immediately to commit any felony of the first or second degree." MODEL PENAL CODE § 222.1 Robbery (AM. LAW INST. 2014). The MPC explanatory note further explains, "[r]obbery is distinguished from ordinary larceny by . . . the use or threat of violence." *Id.* at explanatory note. Hence, under the MPC's definition of robbery, violence must be used or threatened in order for a robbery to occur.

-20-

Second, an Ohio conviction for robbery under O.R.C. 2911.02(A)(3) is categorically overbroad when compared to the generic offense of robbery under the MPC. The analysis required here is similar to the above discussion finding the career offender enhancement's force clause inapplicable in this case. On the one hand, Ohio's robbery offense in O.R.C. § 2911.02(A)(3) punishes non-violent conduct like snatching a purse, theft completed by non-violent compulsion or constraint, threats to harm things as opposed to persons, and any other non-violent threats that induce a victim to hand over property. *See* O.R.C. § 2911.02(A)(3); Syl. pt. 1, *State v. Davis*, 451 N.E.2d 772; *Carter*, 504 N.E.2d at 470; *Bush*, 694 N.E.2d 986. On the other hand, the MPC robbery definition requires the "use or threat of violence" to complete the theft. Hence, Ohio's definition of "robbery" includes elements materially different from those of the generic offense of "robbery." As such, the Court finds, applying the categorical approach required by *Taylor*, that Ohio's definition of robbery set forth in O.R.C. § 2911.02(A)(3) is idiosyncratic and broader than the generic robbery crime envisioned by the drafters of the Guidelines and enumerated in the commentary. Applying the categorical approach, Ms. Litzy's Ohio robbery conviction, therefore, cannot constitute a robbery as that term is enumerated in the commentary to the Guidelines.

The Court's ruling is bolstered by other Fourth Circuit precedent regarding offenses enumerated in § 4B1.2(a)'s commentary. The Fourth Circuit has held that the Guidelines commentary must be read in light of its text, and that offenses enumerated in the commentary must be tied to either clause of § 4B1.2(a). *See Shell*, 789 F.3d at 345. Therefore, although robbery is enumerated in the commentary, an Ohio robbery conviction must still meet the requirements for either clause of § 4B1.2(a). However, as discussed above, neither § 4B1.1(a)'s force clause nor its residual clause can support finding an Ohio robbery conviction is a crime of violence. Applying *Shell*, Ms. Litzy's Ohio robbery conviction does not constitute a crime of violence under § 4B1.2(a)

-21-

because Ohio's definition of robbery fails to meet the requirements of either clause under § 4B1.2(a), the commentary's enumerated robbery offense notwithstanding.

To conclude, under the categorical approach, an Ohio conviction for robbery under O.R.C. § 2911(A)(3) is categorically broader than the generic definition of "robbery," as that term is used in U.S.S.G. § 4B1.2(a) cmt. 1. Therefore, Ms. Litzy's conviction for robbery under Ohio law does not constitute robbery for purposes of the Guidelines commentary. Having concluded that Ms. Litzy's robbery conviction cannot constitute a crime of violence under § 4B1.2(a)'s force clause, residual clause, or commentary, the Court holds that Ms. Litzy's robbery conviction under O.R.C. § 2911.02(A)(3) is not a crime of violence for purposes of the Guidelines career offender enhancement set forth at § 4B1.1.

As a final matter, this Court, by ruling that convictions under O.R.C. § 2911.02(A)(3) are not crimes of violence, does not intend to minimize the violence that often inheres in a typical robbery. Although robbery often involves violent force, Ohio's definition of force is simply broader than the way that term is used in the Guidelines, and the categorical approach will not tolerate such overbreadth. *See Shell*, 789 F.3d at 339. The Court holds only that a robbery conviction under O.R.C. § 2911.02(A)(3) is categorically overbroad for purposes of applying the Guidelines career offender enhancement set forth at § 4B1.1. Robbery convictions under other parts of the Ohio statute may still serve as a predicate conviction for applying the career offender enhancement if they meet the Guidelines' requirements.

## III.    Conclusion

For the foregoing reasons, the Court rules that a prior robbery conviction under Ohio Revised Code § 2911.02(A)(3) cannot qualify as a crime of violence as that term is used in the career offender enhancement set forth in U.S.S.G. § 4B1.1. Therefore, the career offender

-22-

enhancement may not be applied in Ms. Litzy's case, and the Court **SUSTAINS** the Defendant's objection to applying the career offender enhancement to Ms. Litzy sentence.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        October 8, 2015

ROBERT C. CHAMBERS, CHIEF JUDGE

-23-